UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| SENTINEL REAL ESTATE CORP., | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | |
| | § | Civil Action No. 3:25-CV-2510-X |
| CINTAS CORP. NUMBER 2 d/b/a CINTAS FIRE PROTECTION, | § | |
| | § | |
| | § | |
| *Defendant*. | § | |

**MEMORANDUM OPINION AND ORDER**

Before the Court is Defendant Cintas Corp. Number 2's[1] motion for summary judgment. (Doc. 8). After reviewing the motion, the briefing, and the applicable law, the Court **GRANTS IN PART** and **DENIES IN PART** the motion and **DISMISSES WITH PREJUDICE** Plaintiff Sentinel Real Estate Corp.'s (Sentinel) Texas Deceptive Trade Practices Act claims.

## I. Background

Winter Storm Uri strikes again with another case about leaky pipes. The plaintiff is Sentinel, a company with significant real estate holdings, or as Monty Python would say, huge tracts of land. One such tract is an apartment complex in Irving. The defendant is Cintas Corp. Number 2. And what is it that you do, Cintas Corp. Number 2? Servicing fire suppression systems.

In 2021, Sentinel and Cintas Corp. Number 2 (Cintas) agreed for Cintas to

[1] Number 2? Really??? This sounds like Austin Powers. No wonder it uses a d/b/a.

provide annual fire alarm, sprinkler, extinguisher, and other related services to Sentinel's property. The contract expired at the end of one year; however, it also contained a renewal clause: "[i]f [Sentinel] requests and/or Cintas perform any work on any System including, but not limited to, [the System's inspection, testing and/or maintenance] without execution of a new Agreement, [Sentinel] agrees that such work is subject to and limited by the Terms and Conditions of this Agreement."[2]

After the initial contract expired, Sentinel contacted Cintas about a sprinkler pipe leak. Cintas agreed to make the repairs and sent an invoice. Sentinel asserts that the parties entered an oral contract to repair the property that did not renew or reincorporate the initial written contract. Months later, the same pipe started to leak again and Sentinel hired a new company to repair the damage.

Sentinel sued Cintas for breach of contract, negligence, and violation of the Texas Deceptive Trade Practices Act.

## II. Legal Standard

District courts can grant summary judgment only if the movant shows "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[3] A dispute "is genuine if the evidence is sufficient for a reasonable jury to return a verdict for the nonmoving party."[4] If the movant presents a properly supported motion, "the burden shifts to the nonmoving party to show that summary

[2] Doc. 10 at 4.

[3] FED. R. CIV. P. 56(a).

[4] *Goodson v. City of Corpus Christi*, 202 F.3d 730, 735 (5th Cir. 2000) (cleaned up).

judgment is inappropriate."[5] "[M]ere allegations or denials" will not suffice; nor will "unsubstantiated or conclusory assertions that a fact [dispute] exists."[6] The nonmovant must present "evidence sufficient to support a jury verdict."[7]

## III. Analysis

Sentinel's complaint contains three claims: (1) breach of (oral) contract; (2) negligence; and (3) violation of the Deceptive Trade Practices Act. The Court addresses each in turn.[8]

### A. Breach of Contract

The parties dispute whether Sentinel and Cintas's agreement to repair the property incorporated the terms of the contract or formed only a new oral contract for repairs. Because the express terms of the initial contract cover this situation—a request for repair after the end of the one-year contract—the Court finds that as a matter of law the terms of the initial written agreement control.

This case is governed by Ohio law, and neither party disputes the choice of law. But why would a district court in Texas apply Ohio law to a purported oral contract agreed to in Texas for a Texas property? Because the initial written contract had a

---

[5] *Morris v. Covan World Wide Moving, Inc.*, 144 F.3d 377, 380 (5th Cir. 1998).

[6] *Id.*

[7] *Id.*

[8] The Court **OVERRULES** the objection to the evidence presented by Cintas. *See Chevron Oronite Co. v. Jacobs Field Serv. N. Am., Inc.*, 951 F.3d 219, 227 n.8 (5th Cir. 2020) (quoting FED. R. CIV. P. 56(c)(2)) ("On summary judgment, evidence, to be considered, need not be offered in a form admissible at trial; it need only be *capable* of being 'presented in a form that would be admissible in evidence.'"). Cintas's evidence meets this standard.

choice of law clause for Ohio law.[9] Sentinel's briefing on Ohio law[10] undermines the notion that the written contract terms do not control.

Having found the written contract terms control, Sentinel raises four arguments against terms of the contract: lack of mutual assent, the limitation is inconspicuous, ambiguity, and unconscionability. The Court disagrees with each argument and finds the clause enforceable.

*Lack of Mutual Assent*

Sentinel's first argument that it did not agree to the contractual limitation fails because the written contract expressly contemplates enforcement of the original contract terms and conditions if work is performed after the expiration of the contract. Even if it did not, the reference to the terms and conditions in the work order, and the parties' prior course of business, satisfy agreement to the terms and conditions.

To form contract under Ohio law, there must be: (1) an offer; (2) acceptance; (3) capacity; (4) consideration; (5) a manifestation of mutual asset; and (6) legality of object and consideration.[11] The manifestation of assent "may be made wholly or partly by written or spoken words, or by other acts or the failure to act."[12] The way sophisticated parties do business can establish a "course of dealing" that manifests assent.[13]

[9] Doc. 10 at 6.

[10] Doc. 13 at 12.

[11] *Kostelnik v. Helper*, 770 N.E.2d 58, 61 (Ohio 2002).

[12] *Costner Consulting Co. v. U.S. Bancorp*, 960 N.E.2d 1005, 1010 (Ohio Ct. App. 2011) (cleaned up).

[13] *See Overhead, Inc. v. Standen Cont. Co., Inc.*, 2002 WL 31104216, at *4–5 (Ohio Ct. App. 2002).

Here, there is no dispute that the parties' written contract expressly states that "[i]f [Sentinel] requests and/or Cintas perform any work on any System including, but not limited to, [the System's inspection, testing and/or maintenance] without execution of a new Agreement, [Sentinel] agrees that such work is subject to and limited by the Terms and Conditions of this Agreement."[14] And there is no dispute that the work order Sentinel signed after Cintas performed the work references the same terms and conditions of the written contract.[15] On the other occasions that Cintas performed work for Sentinel, Sentinel received and signed the work order after the work was finished.[16] And the parties do not dispute that Sentinel paid Cintas after signing the work order.

So there is not a material issue of disputed fact that necessitates trial. On this record, the Court holds that Sentinel assented to the reincorporation of the contractual terms, including the liability limitation.

*Ambiguity*

The terms of the agreement are not ambiguous. "Under Ohio law, the interpretation of written contract terms, including the determination of whether those terms are ambiguous, is a matter of law for initial determination by the court."[17] The Court's role is to give force to the parties agreement by "examin[ing] the contract as a whole and presume that the intent of the parties is reflected in the language of

---

[14] Doc. 10 at 4.

[15] *Id.* at 14–20.

[16] *See* Doc. 16-1.

[17] *Savedoff v. Access Grp., Inc.*, 524 F.3d 754, 763 (6th Cir. 2008).

the contract"[18] by "look[ing] to the plain and ordinary meaning of the language used in the contract unless another meaning is clearly apparent from the contents of the agreement."[19] "When the language of a written contract is clear, a court may look no further than the writing itself to find the intent of the parties."[20]

Here, the Court does not find any ambiguity in the contract. The parties' agreement expressly states that if Sentinel requests work after the contract is over, then the terms of the contract apply.[21] And the limitations of liability provision is clear that:

> **IF CINTAS . . . [IS] HELD LIABLE FOR ANY REASON FOR ANY LOSS, INJURY, OR DAMAGES OF ANY KIND THAT ARISES OUT OF, RESULTS FROM, OR IS RELATED TO THIS AGREEMENT . . . [SENTINEL] AGREES AND WARRANTS THAT CINTAS'S . . . COLLECTIVE LIABILITY TO [SENTINEL]. . . SHALL BE LIMITED EXCLUSIVELY TO $1,000 AS LIQUIDATED DAMAGES.**[22]

This provision is not ambiguous, so this argument fails as well.

---

[18] *Sunoco, Inc. (R & M) v. Toledo Edison Co.*, 953 N.E.2d 285, 292 (Ohio 2011).

[19] *Id.*

[20] *Id.*

[21] Doc. 10 at 4.

[22] *Id.* at 5.

*Inconspicuousness*

Sentinel's arguments for inconspicuousness fair no better. As quoted above, the limitation was included in the written contract in all bold and capital letters. Regarding the conspicuousness of section four, Sentinel's argument fails because it ignores that Sentinel received the same limitation-of-liability language, printed in the same manner, on at least eight separate invoices and work orders that its own representatives, reviewed, agreed, and signed without objection between November and December 2022—each of which separately and expressly stated that Sentinel had received, read, acknowledged and understood the Terms and Conditions in their entirety and agreed to be bound by the terms.[23]

Having received actual, repeated notice of the identical Terms and Conditions on multiple separate occasions, Sentinel cannot now credibly claim it was surprised by, or unaware of, those very same terms. The Court thus finds that the clause is conspicuous, and that Sentinel does not raise an issue of material fact, so summary judgment is foreclosed on this question.

*Unconscionability*

Finally, Sentinel's argument regarding unconscionability fails. This contract was negotiated by sophisticated parties in the course of doing business. Sentinel, a billion-dollar company, had all the resources at its disposal to negotiate the terms of this agreement.[24] The Court does not hold that the clauses are unconscionable.

[23] *See* Doc. 16-1 at 11–12, 19, 26, 33, 40, 47, 54.

[24] *Nahra v. Honeywell, Inc.*, 892 F. Supp. 962, 970–71 (N.D. Ohio 1995) (limitation-of-liability clauses in alarm-system contracts "may be freely bargained for in Ohio" and are not unconscionable absent a showing of commercial unreasonableness and lack of meaningful choice).

* * *

All four of Sentinel's arguments against the limitation fail and the Court will enforce the $1,000 liability limitation if a jury finds that Cintas breached the parties' oral agreement. Because no argument was raised about dismissal of the claim, the breach of contract claim survives summary judgment.

### B. Negligence

Cintas also moves to dismiss Sentinel's negligence claim it alleges that it owed no independent duty outside of the contract between the parties. Sentinel argues that the common law imposes a duty to perform work in a workman like manner. Here, Ohio law is clear that "in this state Ohio that the duty to perform in a workmanlike manner is imposed by common law upon builders and contractors."[25] So the Court cannot dismiss this claim, but it is limited by the parties' liability limitation.

### C. Texas Deceptive Trade Practices Act

Finally, Cintas seeks to dismiss the Texas Deceptive Trade Practices Act claim because Sentinel does not have standing to assert a claim under the statute. Sentinel did not contest this argument in its response. And the Court agrees with Cintas.

The Texas Deceptive Trade Practices Act applies to consumers.[26] But it does not apply to business consumers that have assets of $25 million or more, or that is

---

[25] *Morris v. Gedraitis*, 221 N.E.3d 182, 198 (Ohio Ct. App. 2023) (cleaned up).

[26] D*ewayne Rogers Logging Inc. v. Propac Indus.*, 299 S.W.3d 374, 386 (Tex. App.—Tyler 2009, pet. denied).

owned or controlled by a corporation or entity with assets of $25 million or more.[27] Sentinel does not contest—and its own website admits—that it falls out of the statutory class protected by the statute.[28] So Sentinel cannot assert this claim, and the Court must **DISMISS WITH PREJUDICE** this claim.

## IV. Conclusion

For the above reasons, the Court **GRANTS IN PART** and **DENIES IN PART** the motion and **DISMISSES WITH PREJUDICE** Sentinel's Texas Deceptive Trade Practices Act claims.

**IT IS SO ORDERED** this 3rd day of September, 2026.

BRANTLEY STARR
UNITED STATES DISTRICT JUDGE

[27] TEX. BUS. & COM. CODE § 17.45(4).

[28] About Us, SENTINEL REAL ESTATE CORP. (last visited Sept. 2, 2026), https://www.sentinelcorp.com/aboutus.